IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

E. MICHELLE WORTHINGTON,        )
on behalf of minor child, J.W.,      )
                                                    )
                    Plaintiffs,            )
                                                    )
v.                                                 )          CIVIL ACTION NO.  2:04CV201-VPM
                                                    )          [WO]
                                                    )
ELMORE COUNTY BOARD OF      )
EDUCATION, et al.,                      )
                                                    )
                    Defendants.          )

## ORDER ON MOTION

Pending before the court is the defendants' [collectively, "the Board"] motion for attorney fees (Doc. # 151), to which the plaintiff ["Worthington"] has objected (Doc. # 152).[1] Having considered the parties' submissions, the court concludes that the motion should be denied.

## I.    FACTS AND PROCEDURAL HISTORY

The court adopts the following statement of facts provided by the Eleventh Circuit Court of Appeals in its *per curium* opinion affirming this court's judgment as a matter of law

---

[1]Although the case is now closed, for ease of reference, the court continues to identify the former parties as plaintiff and defendants.  The defendants remaining in the case include the Elmore County Board of Education ["BOE"], Marshall Anderson ["Anderson"], Pat Ellis ["Ellis"], and Henry Blake ["Blake"].

in favor of the defendants:[2]

> At the time of the [underlying] incident, October 3, 2002, J.W. was seven years old and was enrolled in the Intensive Therapeutic Placement Center ("ITPC") in the Elmore County System.   According to the parties' joint stipulation of facts, ITPC is "an alternative school for students with behavioral and emotional problems."   While enrolled at ITPC in the fall of 2002, J.W. regularly rode a small, special education bus, with five seats and spaces for wheelchairs, to and from school.   This bus transportation was provided by the Board.

> J.W.'s bus ride to school each day was about thirty miles, and there was a specific authorized location at which the bus driver was to pick J.W. up in the morning and drop him off in the afternoon.

> On October 3, 2002, J.W.'s regular bus driver was absent, and [defendant] Henry Blake, a substitute bus driver for the Elmore County School System, was called in to drive the bus.   J.W. alleges that he was sexually molested and assaulted on the bus that afternoon by J.M., another student who was eleven years old at the time.   According to J.W., J.M. offered J.W. candy if he came and sat next to J.M. in the bus seat.   J.M. then pulled out his penis, shook it, and convinced J.W. to shake it and to put his mouth around it.   J.M. then turned J.W. around, pulled his pants down, and attempted to penetrate J.W.'s anus.  When J.W. complained that it hurt, J.M. turned J.W. around and again convinced him to shake J.M.'s penis until he ejaculated.

> That afternoon, Henry Blake let J.W. off at a stop other than his authorized stop.  J.W. was picked up by another bus driver, who found J.W. walking along the highway more than a mile from home and took J.W. home.  J.W. told his mother of the alleged events, and Worthington contacted the Elmore County Sheriff's Department.  J.W. was taken to the hospital to be examined and also gave a statement to Elmore County Sheriff's Deputy R.G.

---

[2]The Court of Appeals noted that many of the facts were not uncontested (Doc. # 148, p. 4 n.2).

Head.

The next day, Worthington and J.W. met with Elmore County Chief Investigator G.W. Kracke.  At the conclusion of that meeting, they all were called to the school, where they met ITPC Administrator [defendant] Pat Ellis.  Investigator Kracke, school counselor Les Schlensker, and Associate Superintendant [sic] [defendant] Marshall Anderson met with J.M. and his guardian.  According to Kracke's trial testimony, "[i]t was very difficult to talk with [J.M.].  But based on what I was interpreting him saying, that he was admitting to a sexual act on the bus."  Schlensker, however, testified that J.M. denied any physical contact.  Anderson also testified that J.M. denied physical contact but admitted that the two boys had exposed themselves to each other.

After the incident, J.W. and J.M. continued to attend ITPC but were taught in separate classrooms.  They both rode the bus from the ITPC to the cafeteria at Wetumpka High School for lunch, but were seated with their own classes and supervised at all times.  No problems are alleged to have arisen on these trips.  In December 2002, Worthington removed J.W. from ITPC and the Elmore County School System, and J.W. began attending school in the Jemison School System.

On March 4, 2004, Worthington filed this action in the district court.  As amended, Worthington's complaint asserted claims against the Board and a variety of individual defendants for violations of the Fourteenth Amendment, Title IX, and state law.

(Doc. # 148, pp. 2-5).

Originally, Worthington named as defendants the Elmore County Board of Education ["BOE"], the individual members of the BOE, and several administrators employed by the BOE, whom Worthington sued in their individual and representative capacities (Doc. # 1).  In her second amended complaint, Worthington also named Blake, the substitute bus driver (Doc. # 31).

3

As summarized in this court's amended order on pretrial hearing (Doc. # 113), with respect to the claim under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 (2000) [hereinafter "Title IX"], Worthington contended that the BOE

> had knowledge of J.M.'s behavioral problems, including but not limited to sexually inappropriate conduct and threats toward[] students, and the requirement that J.M. must be supervised and monitored at all times. Despite this knowledge, defendant took no action to prevent the assault on the bus. Defendant was deliberately indifferent toward J.M.'s behavior problems and failed to safeguard against them. In addition, defendant was deliberately indifferent in its handling of the assault. The assault in this case was so severe, pervasive and objectively offensive that it deprived J.W. access to educational opportunities.

(Doc. # 113, pp. 2-3).

In addition, pursuant to 42 U.S.C. § 1983 (2000) [hereinafter "1983"], Worthington contended that all of the defendants violated J.W.'s Fourteenth Amendment "right to bodily integrity and safety[,] which includes the right to be free from sexually motivated assaults." *Id.* at 3. Finally, Worthington claimed that the defendants breached their duty of care under Alabama tort law and later added claims for "assault and battery" and "outrage" (Doc. # 1, pp. 8-10; Doc. # 31, pp. 12-13).

Prior to trial, the court dismissed Worthington's state law claims against all of the defendants except for the negligence claim against Blake in his individual capacity (Doc. # 92). With Worthington's acquiescence, the court also dismissed the federal claims against the individual defendants in their representative capacity (Doc. # 100), and, pursuant to Worthington's request, dismissed several other individual defendants (Docs. ## 62, 69).

4

Ultimately, the claims remaining for trial included the Title IX claims against the BOE; the Fourteenth Amendment claims against Anderson, Ellis, and Blake; and the negligent supervision claim against Blake (Doc. # 113, pp. 4-5).

At the close of the plaintiff's case at trial, the court granted in part the Board's motion for judgment as a matter of law (Doc. # 122) and entered judgment against Worthington on her claims against the BOE, Anderson and Blake (Doc. # 126).  The only claim then remaining was the Fourteenth Amendment claim against Ellis, which the court decided in her favor as a matter of law after she presented her case (Doc. # 129).  None of Worthington's claims were submitted to the jury, and on 14 June 2005 the court entered final judgments in accordance with Rule 58 of the Federal Rules of Civil Procedures.

Worthington appealed the court's judgments (Doc. # 132).  While the appeal was pending, on 27 June 2005, the Board submitted a bill of costs along with a notice of its intent to seek attorney fees if the Court of Appeals affirmed (Docs. ## 132-34), which it did (Docs. ## 148-49).  As promised, pursuant to 42 U.S.C. § 1988(b), the Board filed a motion for an award of attorney fees (Doc. # 150) totaling approximately $94,724.50.


## II.   ANALYSIS

Attorney fees may be awarded to the prevailing party in civil rights actions filed pursuant to section 1983 and Title IX. 42 U.S.C. § 1988(b) (2000).  Worthington contends that they should not be awarded in this case, however, because (1) the Board's motion was untimely; and (2) her claims were not so lacking in merit as to justify such an award.

**A.**      *The Timeliness of the Board's Motion*

The relevant rule requires parties seeking an award of attorney fees to file with the court a claim, which shall be "made *by motion* . . . filed no later than 14 days after entry of judgment." **Fed. R. Civ. P**. 54(d)(2)(B) (emphasis added).  The motion "must state the amount or provide a fair estimate of the amount sought." *Id.*  "One purpose of this provision is to assure that the opposing party is informed of the claim before the time for appeal has elapsed." **Fed. R. Civ. P**. 54 advisory committee's note to the 1993 amendments.  As further explained in the advisory committee's note,

> Prompt filing affords an opportunity for the court to resolve fee disputes shortly after trial, while the services performed are freshly in mind.  It also enables the court in appropriate circumstances to make its ruling on a fee request in time for any appellate review of a dispute over fees to proceed at the same time as review on the merits of the case.
>
> \*\*\*
>
> The rule does not require that the motion be supported at the time of filing with the evidentiary material bearing on the fees. This material must of course be submitted in due course, according to such schedule as the court may direct in light of the circumstances of the case.  What is required is the filing of a *motion* sufficient to alert the adversary and the court that there is a claim for fees, *and the amount of such fees* (or a fair estimate).

*Id.* (emphasis added).

As Worthington emphasizes, the Board did not file a motion for attorney fees for seven months after the court entered its final judgment (Doc. # 150).  Thus, Worthington contends, granting the motion would violate the letter and spirit of Rule 54's limitation.

> If the Court were to ignore defendants' failure to follow the requirements set forth in the Federal Rules of Civil Procedure and consider defendants' belated Motion for Attorneys' Fees, the plaintiff will be caused to suffer great prejudice. Had this issue been brought before the Court in a timely manner, as required by the Rules, the issue of the Court's grant or denial of said fees could have proceeded to the appellate court simultaneously with the merits issues. Now, because of defendants' delay, if this Court were to award attorneys' fees, a prospect which plaintiff vigorously challenges, the plaintiff would be forced to pursue a second appeal of this case incurring more costs and protracting this litigation even longer. This situation, created solely by the defendants, is exactly what Congress aimed to prevent when it added paragraph 2 to subdivision (d) of Rule 54 in 1993.

(Doc. # 152, pp. 2-3).

In theory, the court does not disagree with Worthington; however, the issue is not as simple as Worthington's impassioned argument would suggest, for Worthington failed to account for the Board's notice (Doc. # 134), which the Board filed within 14 days of the court's judgment.  In relevant part, the Board's notice stated:

> COME NOW Defendants Elmore County Board of Education, Henry Blake, Marshall Anderson, and Pat Ellis . . . and serve notice upon the Court and all parties of their intent to seek an award of attorneys' fees pursuant to 42 U.S.C. § 1988 if the Court's Final Judgment is affirmed on appeal.

(Doc. # 134).

The question, then, is whether the Board's notice satisfies the letter and spirit of Rule 54's procedural requirements.  The court finds that it does not.[3]

---

[3]The court finds significant the Board's failure to counter Worthington's argument either preemptively or in reply to Worthington's objection.  Consequently, the court has no reason to

Buttressing the court's disinclination to find that a "notice" is the equivalent of a "motion,"[4] the Board's notice failed to include the amount it eventually intended to seek, information the rule clearly requires. Fed. R. Civ. P. 54(d)(2)(B).

In sum, as the language of the rule and the advisory committee notes make clear, the rule aims to require the movant to (1) provide certain, specific information and (2) invite the court to act on that information. The Board's notice accomplished neither objective, and the motion is therefore due to be denied.[5]

_____

discount Worthington's claims of prejudice.

[4]Whereas a "motion" is a request for the court to act, a "notice" is nothing more than an announcement, and clearly Congress must have recognized the meaningful distinction. *See Black's Law Dictionary* 1031, 1087 (7th ed. 1999). *Contrast*, *e.g.*, **Fed. R. Civ. P**. 4(d)(2) (setting forth the requirements for a plaintiff to provide notice to a defendant of a pending civil action and request that the defendant waive service of process); 5(a) (requiring service of "every written motion . . . *and every written notice* . . ." (emphasis added)); 6(d) (establishing a fixed time for serving "[a] written motion . . . *and notice* of [a] hearing" on the motion (emphasis added)); *with* 54(d)(2)(B).

[5]In **Bender v. Freed**, the Seventh Circuit Court of Appeals disposed of an argument that *de facto* notice, as opposed to a properly filed motion, satisfied Rule 54. 436 F.3d 747, 750 (7th Cir. 2006).

> The [movant's] fallback position is that even if the motion was untimely under Rule 54, the district court should have considered it anyway because "all parties were well aware of the [movant's] intention to file a motion for attorneys' fees long before the entry of judgment," and that discussions during a telephonic pretrial conference "left no room for doubt that the Motion would be filed post-judgment." This is not a legal argument; it is an appeal to fairness based upon an asserted absence of prejudice, but without a corresponding claim that compliance with the deadline imposed by Rule 54(d)(2) was impossible or impracticable or that the [movant's] noncompliance was for some reason excusable. We are not persuaded. The Plan missed the deadline under Rule 54(d)(2) and offers no reason for having done so. The fact that the parties were "well aware" that the Plan intended to file a fees motion at some indeterminate date in the future does not excuse noncompliance with

**B.    *The Merits of Worthington's Case***

Alternatively, the court finds that the Board has failed to demonstrate that it is entitled to an award of attorney fees in this case because, applying the standards established by the Court of Appeals, Worthington's claims were not so meritless as to warrant such an award. *See **Coastal Fuels Mktg., Inc. v. Fla. Exp. Shipping Co., Inc.**,* 207 F.3d 1247 (11th Cir. 2000)

---

the applicable procedural rules.

*Id.*

The Eleventh Circuit Court of Appeals has not directly addressed the specific issue but does seem to recognize circumstances in which a movant's failure to comply strictly with Rule 54's requirements may not justify reversing a lower court's decision granting a motion for attorney fees. ***Capital Asset Research Corp. v. Finnegan***, 216 F.3d 1268 (11th Cir. 2000).  The defendant in ***Finnegan*** defeated two of the plaintiff's three claims, but, in ruling for the plaintiff on the third claim, the court awarded all of the relief available under the other two claims.  *Id.* at 1268-69.  On appeal, the Court reversed in favor of the defendant, thus, ultimately, the defendant won the entire lawsuit.  *Id.* On remand, the defendant moved for an award of attorney fees, and the plaintiff argued unsuccessfully that the defendant was not entitled to fees with respect to the two claims on which the defendant succeeded initially.  *Id.*  In other words, according to the plaintiff, the defendant should have filed a motion for attorney fees within 14 days of the district court's initial judgment even though the defendant lost the lawsuit.  *Id.*

Emphasizing the district court's broad discretion to award attorney fees, the court found it

> significant that the parties in the instant case "agreed during the trial of this matter, and the court consented, to the bifurcation of attorneys' fees for later hearing." Thus, [the plaintiff's] assertions of surprise and prejudice–on account of not having been forewarned of attorneys' fees by Finnegan's pleadings–ring hollow.

*Id.* at 1271.  The Court also noted that a question existed as to whether the defendant could have been considered the prevailing party on the two relevant claims when the court awarded as part of its judgment on the third claim all of the relief available under the other claims.  *Id.* at 1272.

The circumstances the Court found significant in ***Finnegan*** are not present in the instant case.

(noting that the applicant bears the burden of establishing entitlement to the fees).

As an initial matter, the court need not address the merits of Worthington's case to find the Board's motion less than compelling.  The Board relies primarily on four factors that justify an award of fees:  (1) the dismissal of several defendants and claims early in the litigation; (2) the Board's alleged refusal to offer to settle the case; (3) the court's granting of judgment in the Board's favor before sending the case to the jury; and (4) Worthington's failure to name J.M., the student who allegedly assaulted J.W., as a defendant (Doc. # 150-1). The court addresses each contention before discussing the substantive merits of Worthington's claims.

The Board fails to direct the court to legal authority suggesting that a dismissal of some but not all claims and parties prior to trial is relevant to a determination regarding the overall merits of a plaintiff's case.[6]  To find that it is would undermine the purpose of notice pleading, which the court is not inclined to do without clear guidance from the Court of Appeals.  *See* Fed. R. Civ. P. 8; ***Evans v. McDonald's Corp.***, 936 F.2d 1087, 1091 (10th Cir. 1991) (describing the purpose of the liberal pleading requirements as "to give the defendant fair notice of the claims against him without requiring the plaintiff to have every legal theory or fact developed in detail before the complaint is filed and the parties have an opportunity for discovery"); ***Krehling v. Baron***, 900 F. Supp. 1574, 1577 (M.D. Fla. 1995) (noting that the theory underlying notice pleading is "that more detailed information should be developed

---

[6]Notably, many of the parties were dismissed voluntarily.

through the discovery process"); *cf. **Marsh v. Butler County, Ala.***, 268 F.3d 1014, 1058 (11th Cir. 2001) (recognizing "a plaintiff's limited ability to develop facts early in the litigation process").

Citing to ***Sullivan v. School Board of Pinellas County***, 773 F.2d 1182, 1189 (11th Cir. 1985), which established "general guidelines" for determining whether an award of attorney fees to a prevailing defendant was warranted in a Title VII case, *see **Cordoba v. Dillard's, Inc.***, 419 F.3d 1169, 1177 (11th Cir. 2005), the Board finds significant its refusal to "offer any payment in settlement of the case" (Doc. # 150-1). Although a defendant's refusal may well indicate its confidence in the strength of its case and, conversely, the weakness of the plaintiff's case, the unsworn statement in the Board's brief does not constitute probative evidence. Therefore, the court declines to consider the Board's contention.

As Worthington contends, the court's disposal of her claims after receiving all of the evidence at trial is not alone determinative of the merits of her claims. The Supreme Court has made it perfectly clear that

> it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success.

***Christiansburg Garment Co. v. EEOC***, 434 U.S. 412, 421-22 (1978) [hereinafter ***Christiansburg***].

Whether the court's granting judgment as a matter of law is relevant depends upon the

reasons for the judgment itself.  Yet, the Board offers no analysis and fails to lend any insight into its rationale for concluding that "[t]he plaintiffs' claims clearly were without foundation and would have required a complete reversal of Eleventh Circuit precedent in order to succeed" (Doc. # 150-1, p. 5).

Finally, Worthington's decision to exclude J.M. as a defendant simply is not relevant to the question before the court.  Her choice not to sue others who may be legally liable for the damages Worthington claimed has no bearing on the legitimacy of her claims against the defendants she chose to hold accountable.

Consequently, the Board's contentions are without merit, and the motion is subject to denial without further discussion.  Regardless, the court now turns to Worthington's case.

The court is guided by the fairly recent decision issued by the Court of Appeals in *Cordoba*, in which the court scrutinized the plaintiff's legal theories underlying her claim that her former employer, a Dillard's department store, violated the Americans with Disabilities Act when it terminated her because of her alleged heart condition.  419 F.3d 1169.  Specifically, the Court of Appeals addressed and treated somewhat unkindly her claims that (1) the ultimate decision maker knew of her alleged disability, (2) someone else who knew of her alleged disability was involved in the decision making process, and (3) the decision maker had constructive notice of her alleged disability.

With respect to the first argument, the court agreed "with the district court that Cordoba fell far short of creating a genuine issue as to whether Groo was aware of her disability." *Id.* at 1180.  Without sufficient evidence to create even an inference in her favor,

the plaintiff's case was "exceedingly weak on this point[,] . . . pure conjecture[,] . . . [and] speculation" *Id.* at 1181.  Further, the Court of Appeals stated, "To be sure, Cordoba's claims were weak, and it is easy at this point to recognize that the court and all parties involved *would have been better off had they never been pursued*."  *Id.* (emphasis added).

Similarly, the Court of Appeals found the evidence concerning her second theory to "have created no genuine issue of material fact and was *not an adequate ground for opposing summary judgment*."  *Id.* at 1182 (emphasis added).  Regardless, the Court added, "the question we address now is whether Cordoba's theory can meet the *substantially lesser standard* of 'not frivolous.'"  *Id.* (emphasis added).

In other words, a claim supported by evidence that is insufficient to raise even an inference in the plaintiff's favor–or, perhaps more accurately stated, no evidence–may nevertheless be "not frivolous" and thus insufficiently meritless to support an award of attorney fees to the prevailing defendant.  The Court of Appeals continued, "[W]e do not think that it was *entirely unreasonable* for Cordoba *to hope* that the court would permit her case to go to a jury on this theory."  *Id.* (emphasis added).

Finally, with respect to Cordoba's third theory, the Court noted rather harshly:

> To be clear, Cordoba's theory lacked support in logic and commonsense, and we have never specifically endorsed it.  Its fundamental flaw lies in the fact that a decision-maker who lacks actual knowledge of an employee's disability cannot fire the employee "because of" that disability.  Moreover, the cases cited by the district court all but completely undermine it as a viable argument in this context.

*Id.* at 1186.

Nevertheless, the Court of Appeals reversed the district court's award of attorney fees because it concluded, upon adopting a noticeably expansive and contextual view of the case, that the plaintiff's claims were not frivolous.

> This case . . . involves a competent employee, who [sic] we assume to be disabled within the meaning of the ADA, who was fired as a result of her first significant violation of her employer's work rules. It is in this light that we must assess the frivolity of Cordoba's [case theories].

*Id.* at 1186.

To be entitled to an award of attorney fees, a defendant in a civil rights case need not establish that the plaintiff's claims were brought in bad faith, ***Christiansburg***, 434 U.S. at 421. ***Cordoba*** makes it exceedingly difficult, however, to envision circumstances that, as a practical matter, would support an award without demonstrating something approaching bad faith. Worthington's case, while ultimately unsuccessful, is far less offensive to the intrinsic sense of what is frivolous than the plaintiff's case in ***Cordoba***.

Following the example set by the ***Cordoba*** court, this court summarizes the essence of the instant case as one involving the sexual assault of an emotionally challenged child while in the Board's care in a setting apparently designed to accommodate the needs of children with known emotional and behavioral problems. Worthington contended that the operation of the Board's policies led to the assault and the Board's failure to adequately investigate and address the situation led Worthington to remove J.W. from the ITPC.

Worthington presented evidence in support of her claims that she could reasonably believe would be submitted to the jury, particularly when the court conducted trial

14

proceedings and allowed Worthington to present all of her evidence before finally ruling on her claims.  Moreover, as a result of Worthington's claims, the Court of Appeals for the first time clarified that a public school designed specifically to educate special needs children has no constitutionally mandated duty to protect its students from the actions of third parties (Doc. # 148, p. 9).[7]

Under these circumstances, and in light of the extremely high hurdle ***Cordoba*** constructs for prevailing defendants in civil rights cases, the court cannot find that Worthington's claims were sufficiently meritless to justify an award of attorney fees to the Board.  To conclude otherwise would give the misleading impression that Worthington and her attorneys should have known better than to bring this lawsuit in the first place when the court is not convinced that this proposition is a valid one.

### III.    CONCLUSION

Therefore, it is hereby

ORDERED that the Board's motion for an award of attorney fees (Doc. # 150) is DENIED.

DONE this 17th day of April, 2006.

---

[7]The court also finds significant the defendants' failure to submit any evidence whatsoever in support of their motion for summary judgment, which the court consequently denied (Docs. ## 45, 55).  Not only does the oversight belie the accusation of frivolity, but also a properly supported motion may well have ended this lawsuit six months and 66 docket entries before the trial began.

/s/ Vanzetta Penn McPherson
VANZETTA PENN MCPHERSON
UNITED STATES MAGISTRATE JUDGE